## PENNSYLVANIA R. CO. v. BARLION.
### No. 10695.

United States Court of Appeals
Sixth Circuit.
Feb. 8, 1949.

James C. Davis, of Cleveland, Ohio (James C. Davis and John J. Adams, Jr., both of Cleveland, Ohio, on the brief; Squire, Sanders & Dempsey, of Cleveland, Ohio, of counsel), for appellant.

Craig Spangenberg, of Cleveland, Ohio (Craig Spangenberg and Marvin C. Harrison, both of Cleveland, Ohio, on the brief; Harrison, Thomas, Spangenberg & Hull, of Cleveland, Ohio, of counsel), for appellee.

Before ALLEN, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

On May 31, 1946, appellee Barlion was injured while engaged in loading and blocking operations of railroad cars in the freight storage yard of the Pennsylvania Railroad Company at Crestline, Ohio. The storage yard had been built and placed in operation by the railroad company pursuant to a contract with the United States Government. The yard consisted of numerous parallel side tracks connected by a direct track to the main line of the railroad company, and was used for open-air storage of carload freight.

Appellee had been working in a gondola car, which, with several others, was being switched in the yard. The cars had been shoved along the tracks by a "bulldozer." They then ran by gravity for a distance and collided with other standing cars, when a defective hand-brake failed to work. On the impact, the load in the gondola car shifted and crushed appellee's thigh.

At the time of the accident, appellee was working for Art Schreck, Inc., a contractor, employed by the railroad to unload cars, to stencil, mark, and store inbound shipments, to re-mark and reload outbound shipments, as required by the Government, and to do other incidental work required by the railroad.[1] The con-

---

[1] The contract between the railroad company and Art Schreck, Inc., provided that the latter would perform "in the most substantial and workmanlike manner, the work described as follows:

tract between the railroad and Government provided for the shipment of war materiel consigned to the freight agent of the Pennsylvania Railroad Company at the storage yard. The railroad company, as consignee, was to unload and store the freight in carload lots. On later order, it was to reload and reship the freight to a final destination.

Barlion sued the railroad, claiming that he was its employee and thereby entitled to the benefits of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. The railroad contended that appellee was an employee of Art Schreck, Inc.; that the latter was an independent contractor; and that, accordingly, there was no liability on the part of the railroad for appellee's injuries.

The district court held as a matter of law that appellee was an employee of the railroad. The case was tried before a jury, which returned a verdict in favor of appellee, upon which judgment was entered. The issue before us is whether appellee was an employee of the railroad company or an employee of Art Schreck, Inc., an independent contractor.

We are of the opinion that decision in this case is controlled by our holding in Pennsylvania R. Co. v. Roth, 163 F.2d 161. In that case, appellee Roth suffered personal injuries from the negligence of the railroad in the same storage yards in which appellee in the instant case was injured. The yards were being provided by the railroad for the United States Government. At the time of the accident, Roth was working for a company which was employed by the railroad to do the same work that Art Schreck, Inc. was em-

ployed to do in this case. The contract provisions concerning the work to be done were identical in the two cases. There were, of course, some differences in the facts. In the Roth case, the railroad paid the contracting company on a cost-plus-fixed-fee basis, based on monthly statements submitted to and certified by the division engineer of the railroad company. In the instant case, Art Schreck, Inc. was paid for its services in lump sum payments. In the Roth case, a car inspector who was an employee of the railroad was present during the loading of a crane on a flat car, and showed the workmen who were loading it a diagram displaying how the loading would have to be effected to comply with the loading requirements of the Association of American Railroads. He also made suggestions from time to time as to how the crane should be fastened, and eventually declared it to be secure. In the instant case, among other circumstances that may be mentioned, it appears that Barlion, in addition to his work in blocking and loading the cars, had been employed on the repair of the tracks in the storage yard, spiking rails, changing ties between the tracks, and doing such similar work; but no one from the railroad company supervised him, and none of the railroad employees had ever told him what to do or what not to do.

■ Each controversy involving the status of an independent contractor must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative. In the Roth case, it was said, in comparing the circumstances there involved to those in Cimorelli v. New York Central Railroad Company, 6 Cir., 148 F.2d

---

"Crestline, Ohio.

"The unloading of Federal equipment and supplies from railroad cars and the reloading thereof onto railroad cars at Railroad Storage Yards at the above-named points, comprising the following work; viz:

"Unloading inbound cars;

"Assembling and placing dunnage on ground for piling and storage of inbound shipments;

"Removal from inbound cars and re-conditioning of blocking materials;

"Stenciling, marketing and placing in storage in said yards, inbound shipments

in accordance with Government requirements;

"Removing from storage, and stenciling and re-marking outbound shipments and the loading of same on railroad cars, properly blocked and banded, as required by the Government;

"Furnishing, blocking, banding, and other necessary material when requested by the Company;

"Recoopering damaged cases;

"Such other work incident to the aforesaid operations as may be requested by the Company."

**712**

575, that the court, in its over-all estimate of the controlling facts in the latter case, pointed out that the employment of the contractor was general, that the number of cars to be unloaded or reloaded depended upon the demands of the business, that the work was to be done when, where, and in the proportions as the needs of the railroad company might justify, that the railroad company controlled the place where the work was to be performed and in which there was a frequent movement of cars, and that no part of the premises was surrendered to the contractor. It was further said that the whole project involved many interdependent details, the control of any one of which could not be surrendered without disorganization of the whole, and that, from the nature of the work, its performance could not be committed exclusively by the railroad to the contractor engaged in doing the unloading and reloading work and rendering the other services in question. The railroad had this right of control in the instant case to the same extent as it did in the Roth case; and it is the right of control, rather than its exercise, that determines whether or not a contractor is an independent contractor. The Roth case, therefore, cannot be distinguished on the ground that the control of the railroad company was there exercised, whereas it was not exercised in the present case.

Here, as in the Roth case, "The contract between the appellant and the contractor is general and somewhat indefinite as to the exact nature of the work to be done by the contractor. It refers in general terms to unloading, assembling, stenciling, removing from storage and loading on railroad cars, and provides in several instances that such work is to be done in accordance with Government requirements. It concludes with the general provision 'such other work incident to the aforesaid operations as may be requested by the Company.'" Pennsylvania R. Co. v. Roth, 163 F.2d at page 164.

Although there are differences of details in the present case as compared to the Roth case, we are of the opinion that the controlling considerations are the same;

that, in the light of the circumstances here disclosed, the Schreck company was not an independent contractor; and that appellee Barlion was subject to the Federal Employers' Liability Act as an employee of the railroad.

In accordance with the foregoing, the judgment of the district court is affirmed.