**Dovie Ray BAKER et al., Appellants,**

v.

**TEXAS & PACIFIC RY. CO., Appellee.**

No. 15298.

Court of Civil Appeals of Texas.

Dallas.

Dec. 6, 1957.

Rehearing Denied Jan. 17, 1958.

Caldwell, Baker & Jordan and Ken R. Davey, Dallas, for appellants.

Robertson, Jackson, Payne, Lancaster & Walker, and D. L. Case, Dallas, for appellee.

YOUNG, Justice.

The suit is prosecuted by appellant as administratrix of the Estate of Claude Baker, deceased husband, also as next friend of their three minor children, claiming liability against appellee Railroad Company for his death which occurred August 20, 1952. From a jury trial and finding of contributory negligence on part of said Claude Baker, a defendant's judgment resulted, and this appeal; the trial court rejecting plaintiff's assertion of rights pursuant to 45 U.S.C.A. § 51 et seq., Federal Employers' Liability Act. Defendant Railroad had made W. H. Nichols & Company, Inc., a party hereto, and has appealed from the trial court's adverse ruling on its cross-action for indemnity against Nichols Company in event of liability to plaintiffs; details of which phase of the litigation will later appear.

On April 1, 1952 the Railroad and Nichols Company had entered into a written contract for grouting work between specified mile posts (pumping of sand and cement into roadbed under pressure for strengthening and stabilization). The Nichols Company was engaged in performance of this contract and Claude Baker, deceased, was on the job as one of its employees when struck by defendant's eastbound train. This contract is therefore quoted in full, together with supplement thereto of later date:

"This Agreement, executed in duplicate April 1, 1952 by and between The Texas and Pacific Railway Company, herein called Carrier, first party, and W. H. Nichols & Company, Inc., Dallas, Texas, herein called Contractor, second party; Witnesseth

"For and in consideration of the keeping by each of the parties hereto of the several covenants and agreements hereinafter set forth, it is hereby mutually agreed as follows:

"1. Contractor shall within thirty (30) days after the execution of this contract begin and diligently prosecute the work described herein until completed in a first class and workmanlike manner and to the satisfaction of the Carrier's Chief Engineer or his duly authorized representative. The work to be done by the Contractor shall consist of:

"Furnishing labor, equipment and water for grouting roadbed on Carrier's double track main line at locations between Mile Post 215, near Dallas, and Mile Post 230, near Arlington, Texas, as specified by Carrier's Chief Engineer or his representative. Area to be grouted consists of a total or approximately 42,040 track feet.

"2. For the faithful performance of the work by the Contractor, The Carrier shall make and Contractor shall accept payment at prices or rates as follows: $0.10 per linear track foot of roadbed grouted, plus $0.30 per cubic foot of sand pumped into roadbed measured dry. Payment hereunder is to be made promptly upon completion and acceptance of the work, if completed within 30 days; otherwise, payment shall be made at the end of each 30 days as the work progresses. Contractor, if called upon, shall furnish Carrier written evidence that he has paid in full all amounts that may be due by him to any and all persons who may perform labor or furnish material or supplies in connection with said work; and in the event he fails to furnish satisfactory written evidence thereof carrier may withhold payment pending receipt of such written evidence.

"As one of the considerations hereof Carrier, insofar as it lawfully may do so shall transport free to the site of the work and, after completion of the work therefrom not exceeding an equal distance, via solely the line of Railway of Carrier, Contractor, Officers, men, teams and equipment actually engaged on or in connection with the work, but excluding fuel, supplies and explosives; and all such transportation shall be at Contractor's risk in case of accident or damage.

, "3. In the performance of any of the work or services herein provided, or any part thereof, Contractor shall occupy the status of an independent contractor, and shall not be subject to the detailed supervision and direction of Carrier, but responsible to Carrier only for the final results in the accomplishment of such work or services.

"4. Contractor shall and does hereby assume full responsibility for and agrees to defend, indemnify and hold the Carrier harmless from any and all liability, damage and expense which the Carrier may incur or suffer by reason of (a) any breach by Contract of any of the covenants herein contained, (b) injury to or death of any persons, or loss, damage or destruction of or delay to any property, arising out of, resulting from or incident to the performance or nonperformance of any of the services and obligations herein assumed by Contractor and (c) transportation of persons and property by Carrier in conformity with paragraph 2 hereof.

"5. Contractor assumes any and all liability for and agrees to indemnify Carrier against any and all taxes, contributions and comparable payments imposed by or arising under any municipal, State or Federal law, order or regulation upon or incident to the payment by Contractor of wages, compensation or other forms of remuneration to persons in his employ, performing the services provided for herein, or any part thereof. * * *"

(Supplement)
"December 2, 1952.
File:     330–2
"W. H. Nichols & Company, Inc.
3015 Grand Avenue
Dallas, 10, Texas

Gentlemen:

"Please refer to our contract dated April 1, 1952, covering grouting of roadbed between our Mile Post 215, near Dallas, and Mile Post 230, near Arlington, unit prices covered by this contract being 10¢ per lineal foot of roadbed grouted plus 30¢ per cubic foot of sand pumped into roadbed, measured dry.

"The above mentioned contract, while not limited as to period of time, is limited as to location of work. We wish to continue this work during the year 1953, working to vicinity of Mile Post 244, just east of Fort Worth. Preliminary survey indicates that we will wish to grout approximately 20,000 lineal feet in addition to that covered by present contract, although it may develop more grouting than this is desired as we proceed with the work.

"If you are agreeable to doing this grouting work as indicated under the same terms as provided in contract dated April 1, 1952, please so indicate by accepting in space pro-

vided below and returning original of this letter to me for our record. Yours very truly, (Signed) R. J. Gammie, Chief Engineer. Accepted: W. H. Nichols & Company, Inc. By (Signed) W. E. Nichols, W. E. Nichols Title: President."

Above contract was entered into as a result of appellee having advertised for bids, receiving one other bid from a Fort Worth concern.

Appellants predicate their claim to benefits under the Federal Employers' Liability Act on the following allegations of petition on which they went to trial: "IV. That on or about the 1st day of April, 1952, and the 2nd day of December, 1952, Defendant, The Texas & Pacific Railway Company, entered into contracts and agreements with W. H. Nichols & Company, Inc. whereby the said W. H. Nichols & Company, Inc. was to perform certain maintenance and repair work on Defendant's roadbed in Dallas County, Texas; *that said work was a part of the regular maintenance and upkeep of Defendant's line of railway track then in use in interstate commerce* and said contract, while purporting to constitute W. H. Nichols & Company, Inc., an independent contractor, *was in truth and in fact an effort and attempt to evade the provisions of the Federal Employers' Liability Act;* that Defendant, Texas & Pacific Railway Company, at all times mentioned in this petition, had the right to control the details and the manner, means and method by which W. H. Nichols & Company, Inc. performed said work." (Emphasis ours.)

Primary points of appeal center on the trial court's refusal to submit plaintiff's issues 1, 12 and 13. Issues 1 and 13 being similar in form, No. 1 only is quoted along with No. 12: (1) "Do you find from a preponderance of the evidence that with reference to the work W. H. Nichols & Company, Inc., was performing at the time Claude Baker, deceased, was killed, W. H. Nichols & Company, Inc., was not an independent contractor?" (followed by definition of "independent contractor"). Issue

12: "What do you find in terms of percentage to be the entire causal negligence, if any, attributable to Claude Baker, deceased, and that attributable to defendant, Texas & Pacific Railway Company? Answer: Attributable to Claude Baker, deceased, ——— per cent. Answer: Attributable to The Texas & Pacific Railway Company, ——— per cent."

Original petition of Dovie Ray Baker was in form of an action at common law, suing individually and as next friend of the minor children of herself and husband; in first amended original petition asserting coverage of the Federal Employers' Liability Act; in October 1955, qualifying as administratrix, and in third amended original petition of September 1956, suing as "personal representative" of deceased as required by sec. 53, Title 45 U.S.C.A; and alternatively as at common law.

This is a second trial of the case. Prior to any suit, however, but following the death of Claude Baker, appellant wife had filed her notice of fatal injury and claim for workman's compensation benefits with the Industrial Accident Board of Texas; both instruments reciting that the employer of deceased was W. H. Nichols & Company, Inc. Employers Mutual Liability Insurance Company of Wisconsin, compensation carrier, in due course recognized liability and made a lump sum settlement on account of the death of Claude Baker, paying workmen's compensation benefits in the sum of $7,919.94. It was developed from witnesses for plaintiff at the trial that Claude Baker had been hired by Nichols' foreman, who told the crew when to come to work and what to do; when to quit and when the machines were to be moved; that they were paid for their work by Nichols who deducted for their income taxes and social security; that defendant Railway paid them no money, made no deductions from salaries, never told them when to report for work or to quit work; deceased telling his wife that he was employed by W. H. Nichols & Company.

Points of appeal may be summarized in part: The trial court's error (1) in failing to submit plaintiffs' requested issue No. 12, "inquiring as to the percentage of negligence attributable to Defendant and that attributable to Claude Baker, deceased, because the evidence established as a matter of law that Claude Baker was covered by the provisions of the Federal Employers' Liability Act and therefore his contributory negligence was not a complete defense to Plaintiffs' suit but would only diminish their recovery and Plaintiffs were entitled to have their theory of the case submitted in such issue"; (2) in failing to submit issue No. 1 or No. 13, the evidence being sufficient to raise the question of whether or not W. H. Nichols & Company, Inc., was an independent contractor; (3) in overruling plaintiffs' objection to a statement made by defense counsel while interrogating the jury panel as a whole "that Plaintiff had filed a claim for workmen's compensation benefits alleging that Claude Baker was an employee of W. H. Nichols & Company, Inc., and had processed that claim to final disposition before the Industrial Accident Board, and in overruling Plaintiffs' motion to instruct the jury not to consider such statement"; (4) in admitting in evidence the notice of injury and claim for compensation "filed by Plaintiffs with the Industrial Accident Board alleging that Claude Baker was an employee of W. H. Nichols & Company, Inc., which were offered by Defendant, and in failing to instruct the jury, as requested by Plaintiffs, that such evidence was admissible for impeachment purposes only"; (5) in permitting counsel for defendant to read to the jury over plaintiff's objection "paragraph 9 of the third amended original answer, wherein reference was made to claim for compensation Plaintiffs had filed with the Industrial Accident Board based upon the assertion that Claude Baker was an employee of W. H. Nichols & Company, Inc."; (6) in failing to grant "Plaintiffs' motion to withdraw from the consideration of the jury notice of injury and claim for compensation filed with the Industrial Accident Board by Plaintiffs, alleging Claude Baker was an employee of W. H. Nichols & Company, Inc., because such evidence, if admissible at all, was admissible for impeachment purposes only, and the court having failed to submit Plaintiffs' theory that Claude Baker was covered by the provisions of the Federal Employers' Liability Act as an employee of Defendant, such exhibits were not relevant to any issue to be decided by the jury and were highly prejudicial and inflammatory"; (7) in overruling plaintiffs' motion "made prior to the time Plaintiff Dovie Ray Baker took the witness stand, to instruct counsel for Defendant not to interrogate her concerning the Notice of Injury and Claim for Compensation filed by Plaintiffs with the Industrial Accident Board based upon the assertion that Claude Baker was an employee of W. H. Nichols & Company, Inc., and that said claim had been processed to final disposition."

Counterpoints of defendant should be noted in this connection: That the trial court *did not err:* (1, 2) in failing to hold that, as a matter of law, the evidence established that Claude Baker was covered by the provisions of the Federal Employers' Liability Act because there was no evidence (or insufficient evidence of probative force) "that Appellee entered into the contract with W. H. Nichols & Company, Inc. for the purpose or with the intent of evading the provisions of the Federal Employers' Liability Act"; (3, 4) in failing to hold that, as a matter of law, the evidence established that Claude Baker was covered by the provisions of the Federal Employers' Liability Act because there was no evidence (or insufficient evidence of probative value) that the work in question was regular railroad maintenance; (5, 6) in failing to submit plaintiffs' requested issues 1 or 13 because there was no legally competent evidence (or insufficient evidence of probative value) raising the issue as to whether W. H. Nichols & Company, Inc., was an employee or agent of defendant Railway. Counterpoints 7–11 inclusive argue

correctness of the court's ruling with respect to plaintiffs' notice of injury and claim for compensation filed with the Industrial Accident Board as complained of in appellants' points 3 through 7. Cross-assignments of appellee complaining of the court's instruction against it and in favor of W. H. Nichols & Company will be later noticed.

Claude Baker had been a part of the Nichols grouting crew since April 1952, working as cement man; the project having progressed westward to the August location where he sustained fatal injuries. The crew numbered some fourteen men, machine operators, cement and point men, foreman for each machine; and as already stated, the operation consisted of pumping a cement mixture into water pockets, crevices and cracks that might exist in the roadbed.

In support of points 1, 2 and 3, appellant summarizes the testimony of Wm. J. Savage, defendant's Assistant Chief Engineer, and refers to the statement of facts by numbered pages. While appellant's version of certain testimony does not exactly correspond with the record, same will be accepted as true except as challenged by appellee. Savage related that his duties consisted of maintenance of defendant's roadway and tracks; such maintenance was generally to keep the track in safe and good riding condition; elimination of soft spots; "to see that the rails are adequate, and that the track is not allowed to reach condition that it would be dangerous, and not to allow it to deteriorate to the extent that it would not hold the rails in proper gauge." That Nichols Company was the only contractor doing such type of railroad maintenance in this area; the machines for grouting being available for purchase on the open market. That it was not skilled work in so far as performance by the railroad was concerned, with sand and cement furnished by defendant. That the roadmaster determined track area to be grouted, with no specified number of perforations for grouting, transportation to the job furnished by the railroad. That under the Nichols contract the railroad inspector R. L. Slaton was authorized to stop the work if it interfered with operations of trains or was dangerous thereto, and to see that the work proceeded in accordance with the contract. The roadmaster designated and selected work locations, and had the right to require performance in a manner which suited his pleasure; the right extending to requiring more perforations if in his opinion not enough had been made. That Inspector Slaton had the right to, and actually did, instruct the Nichols crew as to amount of sand or cement they used in the grouting mixture or as to amount to be pumped under any particular portion of the roadbed, and require them to do the work correctly.

Other of plaintiff's witnesses testified to the following in effect: That during course of the Nichols job, railroad Inspector Slaton was present almost all the time; that he marked the ties between which grouting points would be inserted; corrected and instructed the mixers if portions of sand and cement were too thin or too thick, and, in case of deficiency, would tell them to correct the condition. That the crew had been told to obey and follow Slaton's instructions; he always telling them when and where the machines were to be moved; Slaton further testifying:

"Q. Now, there was no particular skill about putting these points in the ground, was there? A. No sir.

"Q. Most of these men that were working out there were uneducated laboring men, weren't they? A. Well, I wouldn't say that.

"Q. Well, you have been out there with them, you know that they were not men of education and skill and training, don't you? A. Well, part of them were.

"Q. Yes, and there is no skill required in mixing sand and cement there, is there? A. No sir."

In connection with appellant's above outline of testimony is the statement that the railroad retained the right to terminate the contract at will; challenged by defendant in that there is no provision therein for its termination at will of appellee. Also challenged is appellant's statement with respect to grouting, that: "the work was, in the language of defendant's own chief engineer, just the ordinary maintenance of the railroad." Here defendant points out that only Savage, Assistant Chief Engineer, testified as to whether the work in question was ordinary maintenance or otherwise, and as follows: "Q. Is grouting work simply part of the regular maintenance of the track? A. Yes, I would say that it is; it is not regular maintenance work, but it is a special type maintenance. * * * Q. All right, sir. And that sort of work, grouting, is that ordinary maintenance of a railroad? A. No, sir, I would consider it rather extraordinary maintenance."

It was stipulated that the double tracks between Dallas and Fort Worth at the point where Claude Baker met his death, were used by trains engaged in interstate as well as intrastate commerce.

■ Underlying appellant's complaint of error with respect to her refused issue No. 12 is the postulate that either (1) the Nichols contract for grouting defendant's roadbed was on its face an attempt to evade the provisions of the Federal Employers' Liability Act and therefore void, or (2) that the work being performed was in nature of regular maintenance of roadbed, a nondelegable duty of defendant under its franchise; and constituting Nichols Company its agent and Claude Baker, though nominally an employee of another, in effect an employee of the carrier.

Section 51, 45 U.S.C.A., provides: "Every common carrier by railroad while engaging in commerce between any of the several States or Territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier

in such commerce, or, in case of the death of such employee, to his or her personal representative * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." Section 53 provides for recovery by "such employee" of damages, though guilty of contributory negligence, to be diminished in proportion to the negligence attributable to such employee. Section 55 reads as follows: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: * *."

The only direct testimony concerning appellee's purpose in making the contract with Nichols Company is that given by Savage, its Engineer, as follows:

"Q. Now, the plaintiff in the papers filed in this court has alleged in effect that this contract was a scheme or device to get around the Federal Employers' Liability Act. Is that true, Mr. Savage? A. I would say not.

"Q. All right, sir, why did you contract for this work? A. Primarily because we did not have the equipment nor the knowledge that is necessary to do the work.

"Q. All right, sir. And that sort of work, grouting, is that ordinary maintenance of a railroad? A. No, sir. I would consider it rather extraordinary mainte-

nance." There is no evidence that the work of grouting is of a recurring nature or that it had theretofore been done by the railroad.

Obviously, in above state of the record, it cannot be said that the contract on its face demonstrates an evasion of the Federal Employers' Liability Act. Surely, in view of the testimony of Savage, the matter of defendant's "purpose or intent" in making the contract was not without controversy. It may be that an issue of fact could have been premised on prohibited intent or purpose, but none was requested; and " * * Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived; * * *." Rule 279, Texas Rules of Civil Procedure.

It is further argued that the work being performed by Claude Baker was that of ordinary maintenance—a nondelegable duty of defendant—giving rise to an inference that the Nichols contract is "in avoidance of Federal liability" and per se void under the Act, as in Erie R. Co. v. Margue, 6 Cir., 23 F.2d 664, where the contractor had undertaken with its own employees "to maintain the tracks, roadway, and structures of the railroad company in Ohio"; the court holding that: " * * * The maintenance of defendant's railroad tracks was essential to the exercise of its franchise rights. It undertook to delegate that duty to a construction company, which was largely organized and controlled by its former employees. We think one of the purposes of its contract with the construction company was to avoid the liabilities of the Federal Employers' Liability Act." But the cited case is not controlling of the instant situation where the process of grouting is described by Savage as maintenance of a special type. More analogous in fact are the holdings in Dougall v. Spokane, P. & S. Ry. Co., 9 Cir., 207 F.2d 843, and Norman v. Spokane-Portland & Seattle Ry. Co., D.C., 101 F.Supp. 350, affirmed 9 Cir.,

192 F.2d 1020, certiorari denied 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703.

The cases mainly relied upon by appellant in this connection (Cimorelli v. New York Cent. R. Co., 6 Cir., 148 F.2d 575; Pennsylvania R. Co. v. Roth, 6 Cir., 163 F.2d 161, certiorari denied 337 U.S. 830, 68 S.Ct. 208, 92 L.Ed. 404; and Pennsylvania R. Co. v. Barlion, 6 Cir., 172 F.2d 710) bear principally upon their second point, i. e., of whether it was the intent of the contracting parties under the particular facts to create a relationship of independent contractor. Furthermore, even viewing the situation most favorably from the standpoint of appellant, still the fact question persists of whether the work of grouting was extraordinary maintenance, as testified by Engineer Savage, rather than ordinary; and again appellant cannot be heard to complain, no request having been made for submission of such an issue.

■ In point 2 appellant maintains that the evidence, considered most favorably in her behalf, at least raises a fact issue of whether the status of Nichols under the contract and its performance was that of an employee of the railroad rather than independent contractor; the latter term being defined in the charge as: " * * * any person, who, in the pursuit of a business or occupation, undertakes to do a particular work for other persons, and who has control of such work in respect to the details of the work to be performed, and over whom the person for whom the work is being done, has no right or control as to such details, and who represents the will of the person for whom the work is done only as to the result of his work and not as to the means or method by which it is accomplished." Also relevant in the same connection are rules of decision as announced in Cimorelli v. New York Cent. R. Co., supra (Syls. 1, 3, 5, 7): (1) "The words 'employee' and 'employed', within Federal Employers' Liability Act, must be construed in the natural sense and describe the conventional relationship of employer and employee. Federal Employers' Liabil-

ity Act § 1, 45 U.S.C.A. § 51." (3) "In ascertaining when a person is employee of another although his contract of employment is not directly made with such person, each case must be decided on its peculiar facts and ordinarily no one feature of relationship is determinative." (5) "The important test of ascertaining when a person is employee of another, although his contract of employment is not directly made with such person is the control over details of the work reserved by the employer, and to what extent person doing the work is in fact independent in its performance." (7) "The fact of actual interference or exercise of control by employer is not material in determining whether a person is an independent contractor, but, if existence of right or authority to interfere or control appears, contractor cannot be independent."

· [3] Factual background of the point under discussion has already been outlined; it being contended that the control exercised by defendant's Inspector over details of the project and its performance was such as to constitute deceased Baker an employee of the railroad, the contractor occupying the status merely of agent; at least raising a fact issue. We believe the contention to be without merit, considering the terms of the contract and attendant circumstances appearing without dispute. In the first place, the contract was not terminable at will of defendant, specifying merely a given area to be grouted. Where a writing does not fix a definite time for performance, the law imputes a reasonable time. Palmer v. Katz, Tex.Civ.App., 210 S.W.2d 451. Secondly, this contractor was in the specialized business of grouting. Nichols' foreman hired deceased, told him when to come to work and what to do; Nichols paying the crew their wages, deducting for income taxes and social security; firing any if necessary; the railroad performing none of these functions. The contract stated that Nichols should not be subject to detailed supervision and direction of the carrier; defendant, however, being the only one familiar with its own roadbed, the contract

provided that work of grouting should be done at locations as specified by Carrier's Chief Engineer or his representative. The instructions given by Inspector Slaton concerning details of the work, here emphasized by appellant, are simply referable to the contract in question and his duty to require its satisfactory performance. The *fact* of actual interference or exercise of control by the employer is not material, absent the *right* or authority to interfere or control; Cimorelli v. New York Cent. R. Co., supra. "The mere right of a person who has let out a contract, to supervise the work in such a way as to see that it is performed according to contract, does not make the employees of the contractor his employees. Simonton v. Perry, Tex.Civ. App., 62 S.W. 1090; Smith v. Humphreyville, 47 Tex.Civ.App. 140, 104 S.W. 495, writ of error refused; American Indemnity Co. v. Dinkins, Tex.Civ.App., 211 S.W. 949, writ of error refused." Security Union Ins. Co. v. McLeod, Tex.Com.App., 36 S.W. 2d 449, 451. Nor was the presence of appellee's Inspector, with authority to see that there was no interference with operation of trains, such an assumption of control as to make of Nichols its agent or employee. Dougall v. Spokane, supra.

On the facts, appellant's leading case of Cimorelli v. New York Cent. R. Co., supra, is hardly in point. There the agreement with Duffy as independent contractor, so-called, was on a cost plus basis; the contract itself disclosing that "full control over the means and manner of performance of the contract was reserved to appellee and that there was left in the contractor no independence." Controlling of the issue at hand, in our opinion, is Chicago, Rock Island & Pacific Ry. v. Bond, 240 U.S. 449, 36 S.Ct. 403, 406, 60 L.Ed. 735, involving, as here, instructions given by the railroad to Turner, the contractor; the U. S. Supreme Court holding in part: "The railroad company, therefore, did not retain the *right* to direct the manner in which the business should be done, as well as the results to be accomplished, or, in other words, did not

retain control not only of what should be done, but how it should be done." (Emphasis ours.) [1]

■ Appellant's remaining points, 3 to 7 inclusive (already quoted in substance), must be prefaced by the following facts as reflected in the four bills of exception: In addressing the jury panel on voir dire defense counsel stated that plaintiff had filed her notice and claim with the Industrial Accident Board, not advising the panel, however, of whether compensation had been allowed or denied. Thereafter plaintiff's counsel, in absence of jury, made to the court motions as follows: That defense counsel be instructed, when Mrs. Dovie Ray Baker later became a witness, that she not be interrogated relative to said claim for compensation filed with the Industrial Accident Board or amount of the award (stating grounds), the court granting the motion to the extent that counsel may not refer to any amount received by plaintiff and overruling same to the extent that inquiry could be made "into the filing of a claim with the Industrial Accident Board and the necessary elements including filing of the claim and that a final ruling was made by the Industrial Accident Board, without reference to what the ruling was." That plaintiff's counsel then moved the court to instruct the jury that the testimony in question be limited to impeachment purposes only or to show that plaintiff had made a prior inconsistent statement; the court indicating that it would probably instruct the jury to effect that the particular testimony was admissible for the purpose of showing "prior inconsistent position of the plaintiff." Defense counsel then questioned the plaintiff fully with respect to the matter, including

processing of claim to final disposition, the court not later limiting the testimony to impeachment purposes. A similar motion was made to defendant's pleading of plaintiff's notice of claim, sustained to the extent that defendant's counsel was instructed not to read allegations relative to collection of compensation; and lastly, the particular exhibits (notice and claim) were permittedly taken to the jury room over plaintiff's objection. To none of above court rulings did plaintiff make or urge a motion for mistrial.

It will be noted that during course of the trial these exhibits had bearing on the issue of whether deceased Baker was an employee of the railroad rather than of Nichols within meaning of the Federal Employers' Liability Act, the court rejecting plaintiff's theory of Federal coverage; and submitting the case to the jury only as a common-law action. The later taking of notice and claim into jury room was objected to by appellant, "for the reason that said exhibits at this stage of the proceedings are highly prejudicial and inflammatory and have no bearing on any issue in this case, the court having failed to submit plaintiff's theory that the deceased, Claude Baker, came under the terms and provisions of the Federal Employers' Liability Act and such claims being admissible if at all in the first place only on the question of showing that the plaintiffs had taken an inconsistent position before the Industrial Accident Board, with the position that they are now taking in this case; that to permit the jury to take these exhibits into the jury room is calculated to cause them to discuss and consider the question of whether or not plaintiff and her children have been fully compensated for this injury by having made claim to the

1. Also quite dissimilar in fact are appellants' Texas cases of Gulf Refining Co. v. Rogers, Tex.Civ.App., 57 S.W.2d 183, and Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995, 998. There the writings, referred to as commission agency contracts, were terminable at will of the Oil Company; in both cases the Company reserving extensive right of control; in one (Rogers)

even to right to discharge employees of the lessee; in the other (Martin) the contract requiring Schneider, lessee, in addition to supervision strongly suggestive of a master-servant relationship, to perform such other duties in connection with the operation of his station as may be required of him "from time to time by Company."

Industrial Accident Board of the State of Texas upon the death of Claude Baker as an employee of W. H. Nichols Company, Inc."

In above connection, the jury found that defendant's engine men failed to exercise ordinary care in warning of approach of train and that such failure was a proximate cause of Claude Baker's death; likewise finding that Baker's failure to keep a proper lookout was a proximate cause of his death; also that prior to the arrival of the train, deceased was in a place of safety, stepping therefrom into path of the train when he knew or should have known of its approach, such action being a proximate cause of death. The jury assessed damages in the total amount of $28,045. All other issues were answered against the party relying thereon. At time of death Claude Baker was 56 years of age.

The trial court should have withheld the exhibits in question from any consideration by the jury in their deliberations because, on refusal of plaintiff's requested issues, they had no bearing upon any of the issues raised under the court's charge; the court's ruling, however, amounting to no more than harmless error. Rule 434, T. C.P. The objectionable instruments were in no wise relevant to the issues on contributory negligence found against deceased; the jury awarding substantial damages—an amount not so low as to demonstrate that the jury was motivated by prejudice, bias or other improper motives, and appellant does not so claim. In fact, from the record as a whole, there appears nothing to indicate that plaintiff suffered probable harm from admission of the exhibits or matters relevant thereto as complained of by appellant.

All points of error, upon careful study, are overruled; an affirmance of this judgment rendering unnecessary any discussion of counterpoints brought forward by appellee.

Affirmed.