**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

Petition of Albert P. HOCH and Nancy Hoch for Preferred Payment Out of Operating Expenses.

No. 70–347.

United States District Court, E. D. Pennsylvania.

July 19, 1976.

G. Del. Bates, Parks, Eisele, Lawrence & Bates, David G. Umbaugh, Cleveland, Ohio, for the Hochs.

Carl Helmetag, Jr., John J. Ehlinger, Jr., Philadelphia, Pa., for Penn Central Trustees.

## MEMORANDUM AND ORDER NO. 2461

FULLAM, District Judge.

The petitioners, Albert and Nancy Hoch, have petitioned this Court for an order directing preferred payment of a pre-bankruptcy claim. In January of 1974, petitioners obtained a $44,812 verdict against Penn Central in an Ohio state court proceeding for (1) damages sustained by Mr. Hoch when he was injured while working on a Penn Central Railroad car; and (2) loss of

consortium.[1] The Trustees argue that the petitioners are general unsecured creditors, and are not entitled to preferential treatment in the disbursement of the Debtor's estate.

By Order of this Court, pre-bankruptcy personal injury claims are not being paid currently by the Trustees, and will not be paid, in all likelihood, until the Debtor's reorganization plan is finalized. However, there is a statutory exception to this general rule when the claimant who suffered the personal injury was injured during the course of his employment with the railroad. In those situations, § 77(n) of the Bankruptcy Act, 11 U.S.C. § 205(n), specifically provides that: ". . . [C]laims for personal injury to employees of a railroad corporation . . . arising under State or Federal laws . . . shall be preferred and paid out of the assets of such railroad corporation as operating expenses of such railroad." Under the facts of this case, the ultimate legal question raised is whether Albert Hoch was a Penn Central employee at the time he sustained these personal injuries. If he was, his judgment would be granted a preferred status and he would be entitled to immediate payment of his claim out of the operating assets of the railroad. If he was not, his judgment for personal injuries sustained would place him in the exact same position as other unsecured creditors with pre-bankruptcy personal injury claims against the Debtor, and he would not be entitled to have his judgment satisfied except when, and to the extent

that, provision is made for such payment in a final plan of reorganization.

■ The Trustees argue that Hoch is not entitled to preferential treatment under the provisions of § 77(n) of the Bankruptcy Act since, as they interpret the facts, Hoch was not an employee of the Debtor at the time he sustained these personal injuries. The operative facts concerning Hoch's relationship with Penn Central are not in dispute, although the parties do disagree as to the legal ramifications of that relationship. The following facts are agreed upon: (1) Penn Central had an agreement with Ford Motor Company (Ford) which required the railroad to supply and clean rail cars needed for shipment of automobiles from Ford's Lorraine, Ohio, plant; (2) in order to fulfill this contractual commitment, Penn Central utilized the services of workers supplied to them by an organization known as Manpower, Inc.; (3) on February 3, 1970, Manpower directed Hoch to report to Ford's Lorraine, Ohio, plant for the purpose of removing ice and snow from certain of Penn Central's rail cars; (4) Mr. Hoch did report for work on that date, and in discharging his assigned duties, he was injured; and (5) the work performed by Mr. Hoch on February 3, 1970, was supervised by an employee of Ford, and no Penn Central employee was directly or indirectly involved in the management or supervision of the de-icing procedures.[2]

■ Section 77(n) of the Bankruptcy Act does not define "employee," but the mean-

1. The state court ruled that the Hochs' claim would not be prosecuted as an FELA case, but that liability would be based on a cause of action under Ohio's "frequenter" statute. The jury found that Hoch was a "frequenter" of Penn Central's property, and that he was injured as a result of Penn Central's failure to exercise due care towards him.

2. In the state court litigation, both the trial court and appellate court intimated their view that Hoch was a Ford employee, not a Penn Central employee. The Trustees argue that this determination by the Ohio state courts should be given res judicata and/or collateral estoppel effect in these proceedings, thereby foreclosing the necessity of relitigating Hoch's employment status with Penn Central. It is my

view that the application of principles of res judicata and/or collateral estoppel, in the context of this case, would be inappropriate for the following reasons: First, the Ohio trial court made no specific findings of fact with respect to Hoch's employment status with Penn Central, and therefore, it would be improper to give the state court's legal conclusions concerning Hoch's employment status anything other than the "most limited res judicata and collateral estoppel effect." American Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3 (5th Cir. 1974). Second, and more importantly, principles of comity will not be offended by re-evaluating the merits of Hoch's contentions in these proceedings, since I agree with the apparent findings of the state courts to the effect that Hoch, at the time of his injury, was

**1372**

ing of that term can be gleaned by analyzing the interpretations of similar federal laws which use the term "employee." In the context of this case, the most analogous statute is the Federal Employers Liability Act (FELA), which provides a cause of action for individuals who suffer personal injuries "while employed" by a railroad. Under the reported decisions, individuals employed by independent contractors, who are injured while performing a task which a railroad has a contractual duty to perform, are deemed to be employees of the railroad for purposes of FELA claims, provided only that the railroad must have retained the right or authority to control the means and methods by which the work of the independent contractor is to be done. *Cimorelli v. New York Central R.R.*, 148 F.2d 575 (6th Cir. 1945); *Pennsylvania R.R. v. Barlion*, 172 F.2d 710 (6th Cir. 1949); *Downs v. Baltimore & Ohio R.R.*, 345 Ill.App. 118, 102 N.E.2d 537 (1952).[3]

In *Kelley v. Southern Pacific Co.*, 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974), the Supreme Court discussed the extent to which individuals employed by independent contractors may be deemed to be "employed" by a railroad for purposes of FELA claims. In *Kelley*, an employee of an independent contractor, who was performing a service which a railroad was legally obligated to undertake, was asserting a FELA claim for injuries sustained during the course of his employment. The district court found that the claimant had a valid FELA claim against the railroad, since the railroad had a contractual responsibility to perform the work which was contracted out to the independent contractor. The district court held that since the railroad had the responsibility for supervision and control of the independent contractor's employees, the employee could assert a FELA claim against the railroad, notwithstanding the

fact that the evidence adduced at trial showed that the railroad never exercised its right of control over the independent contractor's employees. The Supreme Court reversed, holding that:

"The district court found that PMT [the independent contractor] employees exercise supervision and control over the unloading operations, although the railroad bore the 'responsibility' for these functions. On these facts, the district court was correct in concluding that PMT was an agent of the railroad. But a finding of agency is not tantamount to a finding of a master-servant relationship. See Restatement (2d) of Agency § 2. The finding that the railroad was 'responsible' for the unloading operations is significantly weaker than would be a finding that it controlled or had the right to control the physical conduct of the PMT employees in the course of their unloading operations. The railroad would satisfy the district court's 'responsibility' test whenever it agreed to perform a service and subsequently engaged another company to perform that service for it on its premises. The 'control or right to control' test, by contrast, would be met only if it were shown that the role of the second company was that of a conventional common law servant. Accordingly, we agree with the Court of Appeals that the district court's test for FELA coverage was too broad." 419 U.S. at 325–26, 95 S.Ct. at 477.

Here, the Trustees concede that Manpower was Penn Central's agent in the performance of its contract with Ford with respect to de-icing operations. However, as the Supreme Court noted, "a finding of agency is not tantamount to a finding of a master-servant relationship." Penn Central had a contractual responsibility to de-ice Ford's automobile railroad cars, and utilized the services of Manpower's employees to

---

not an "employee" of Penn Central, as that term is defined in § 77(n) of the Bankruptcy Act.

**3.** These cases also hold that if the railroad retains the right to control the conduct of the independent contractor's employees, the em-

ployees can maintain a FELA claim against the railroad, notwithstanding the fact that the railroad may not have exercised its right of control. *Cimorelli v. New York Central R.R., supra*, at 578.

fulfill that contractual obligation. Under the *Kelley v. Southern Pacific Co.* decision, the crucial inquiry is whether Penn Central controlled or had the right to control Hoch during his employment at Ford's Lorraine, Ohio plant. As for the question of actual control, the evidence submitted clearly establishes that no Penn Central employee supervised, or attempted to supervise, the de-icing operation at Ford's plant. In fact, from the evidence submitted, it was Ford's personnel that actually supervised the Manpower employees. As for whether Penn Central had the right to control the Manpower employees, it is enough to point out that petitioner has made no attempt to develop a factual record from which the Court could make this legal determination.[4]

In sum, I conclude that although Penn Central had the responsibility to insure that the de-icing operation at Ford's Lorraine, Ohio, plant was carried out, there is nothing in the record to support a finding that Penn Central controlled or had the right to control the de-icing operation. In light of these findings, it follows that Hoch was not an "employee" of Penn Central at the time he was injured, as that term is used in § 77(n) of the Bankruptcy Act. For this reason, the petition will be denied.

### ORDER NO. 2461

AND NOW, this 19th day of July, 1976, upon consideration of the Petition of Albert P. Hoch and Nancy Hoch for Preferred Payment Out of Operating Expenses of Penn Central Transportation Company, and the Trustees' opposition thereto, it is ORDERED that the Petition is hereby DENIED.

---

4. The record does not reflect with precision the interrelationship between Penn Central, Ford, and Manpower. These parties obviously had an unwritten understanding, no doubt established through years of customary usage, which assigned responsibility, to one or more of them, for supervising or controlling Manpower-supplied workers in their performance of Penn Central's contractual duties for Ford. In *Kelley v. Southern Pacific Co., supra,* the FELA claimant went to great lengths to develop a factual record with respect to this crucial area of inquiry. No such record has been provided by petitioner in this proceeding.