LOUIS DRAGO, RESPONDENT, v. CENTRAL RAILROAD
COMPANY OF NEW JERSEY, APPELLANT.

Argued November 29, 1918—Decided May 8, 1919.

1. A plaintiff is not entitled to the benefits of the Federal Employ-
ers' Liability act of April 22d, 1908 (35 *Stat. at L., p.* 65, *ch.*
149; *Comp. Stat.* 1913, § 8657), unless, at the time of the
injury complained of, he was "employed" by the defendant rail-
road company within the meaning of that act. The word "em-
ployed" is used in the statute in its natural sense and is intended
to describe the conventional relation of employer and employe.
2. Where an interstate railroad company contracts with an inde-
pendent stevedoring corporation whereby the latter, at a stipu-
lated charge per ton, undertakes to load and unload freight of
the railroad, at its water front terminal, into and out of cars
and vessels, and the stevedoring corporation selects and removes
its own servants, defines their duties, fixes and pays their wages,
directs and supervises the performance of their tasks, subject
only to the exigencies of railroad transportation, and to such in-
spection and control by the railroad as is essential to enable it
to perform its functions as a common carrier, a workman of the
stevedoring corporation thus selected, paid and directed, and
engaged in the work thus contracted for, is not an employe of
the railroad within the meaning of the Federal Employers' Lia-
bility act of April 22d, 1908 (35 *Stat. at L., p.* 65, *ch.* 149;
*Comp. Stat.* 1913, § 8657), and is not entitled to the benefits
of that act in an action against the railroad company.
3. No evasion of the provision of the Federal Employers' Liability
act of April 22d, 1908 (35 *Stat. at L., p.* 66, *ch.* 149;
*Comp. Stat.* 1913, § 8661), that "any contract, rule, regula-
tion, or device whatsoever, the purpose or intent of which shall
be to enable any common carrier to exempt itself from any lia-
bility created by this act, shall to that extent be void," results
from the making of a contract by an interstate railroad carrier
with an independent stevedoring corporation under which the
work of handling the railroad company's freight from cars to
boats and from boats to cars at its water front terminal is to be
performed by such independent contractor, even though the latter
expressly assumes all liability for injury to its employes while
employed upon the premises of the railroad company.

On appeal from the Hudson County Circuit Court.

For the appellant, *McDermott & Enright* and *James D. Carpenter, Jr.*

For the respondent, *Thomas F. Tumulty, William Mayo Atkinson* and *Alexander Simpson.*

The opinion of the court was delivered by

TRENCHARD, J.  Louis Drago was injured on June 18th, 1917, while transferring steel tires from a railroad car to a lighter at the water front terminal of the Central Railroad Company of New Jersey at Jersey City (the tires being destined for a point in New York).  He brought this action against the railroad company to recover damages for such injury and obtained a verdict and judgment from which the defendant appeals.

We are of the opinion that the judgment cannot stand.

At the trial the defendant contended that the evidence showed conclusively that the plaintiff was not an employe of the defendant railroad company, and therefore could not recover, and raised that question, among others, by an appropriate motion to direct a verdict, by requests to charge, and by exceptions to the charge.

The statute upon which the action is based is the act of April 22d, 1908, entitled "An act relating to the liability of common carriers by railroad to their employes in certain cases." 35 *Stat. at L.*, p. 65, *ch.* 149; *Comp. Stat.* 1913, § 8657.  Section 1 of the act is as follows:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, * * * shall be liable in damages to any person suffering injury *while he is employed by such carrier* in such commerce, * * * resulting in whole or in part from the negligence of any of the officers, agents, or employes of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

Clearly, therefore, if the plaintiff, at the time of the injury, was not an employe of the defendant railroad, he is not entitled to the benefits of the act. The liability created by the act is a liability to the employes of the carrier, and not to others; and the plaintiff was not entitled to the benefits of the act unless he was "employed" by the railroad company within the meaning of the act. The word "employed" is used in the statute in its natural sense and is intended to describe the conventional relation of employer and employe. *Robinson* v. *Baltimore and Ohio Railroad Co.,* 237 *U. S.* 84.

We think that the evidence established beyond dispute that the plaintiff was not employed by the defendant railroad at the time of the accident. It established, on the contrary, that he was employed by the Railroad Stevedoring Corporation, an independent contractor.

It appeared that eight years prior to the accident the plaintiff began to do stevedoring work for the defendant railroad at its terminal in Jersey City. He worked for that company until January 1st, 1915. Prior to the last-mentioned date the Railroad Stevedoring Corporation was organized to engage in general stevedoring business. Thereafter it made contracts for that purpose with various railroad and other companies. This corporation had no connection whatever with the defendant railroad, other than the contractual relations presently to be stated. None of its stock was owned by the defendant or any of its officers; none of the stock of the railroad company was owned by the stevedoring corporation or any of its officers, and the companies had different officers and separate offices. The Railroad Stevedoring Corporation made a contract with the defendant whereby it agreed, at a stipulated charge per ton, to load and unload east and westbound freight at the Jersey City "terminal" of the railroad into and out of cars and vessels; to "have on hand" at all times sufficient force for that purpose; to "assume jurisdiction and control over and employ and place upon its pay roll and pay such present employes of the railroad company as may be required by it, said stevedoring corporation;" and to assume all liability and responsibility

for injuries to its employes while employed upon the premises of the railroad company. That contract took effect January 1st, 1915. On that date, pursuant to that contract, and with the acquiescence of all concerned, the Railroad Stevedoring Corporation took over the stevedoring work of the defendant and some of the workmen engaged therein. The plaintiff was one of these men. Prior to January 1st, 1915, the plaintiff worked under the direction and control of a foreman of the defendant railroad, and was paid by the defendant's officers with its check at its office, which was, and continued to be, its way of paying its employes. After January 1st, 1915, and until the date of the accident, the plaintiff worked under the direction and control of the foreman of the Railroad Stevedoring Corporation; he had a fiber disc given him by that corporation with "R. R. S. C. 42" printed on it; his wages were paid in cash in pay envelopes with his number thereon by officers of the Railroad Stevedoring Corporation and out of its funds. This indicates clearly that the plaintiff was employed by the Railroad Stevedoring Corporation, and that, in so employing him, it acted on its own account and not as the agent of the defendant. Of course, since the work done by the stevedoring corporation was subject to the exigencies of railroad transportation, the railroad company retained the right of inspection and control essential to the performance of its functions as a common carrier. To this end it required that the employes of the stevedoring corporation must be satisfactory to the railroad company and be bound by its rules and regulations, *but that inspection and control related to results only.* This authority of the latter was commensurate with its duty, and existed only that it might perform its paramount obligation. With this limitation the stevedoring corporation organized and controlled its own service, selected its servants, defined their duties, fixed and paid their wages, directed and supervised the performance of their tasks, and placed and removed them at its pleasure. *Robinson* v. *Baltimore and Ohio Railroad Co., supra; Chicago, R. I. & P. R. R. Co.* v. *Bond,* 240 *U. S.* 419.

But this is not all. Before trial, in answers under oath to interrogatories, the plaintiff stated that he "worked for the Central railroad from 1910 to 1915;" that he "was employed for about five years for the Central railroad;" that he "worked in the year 1917 for the Central Railroad Stevedoring Corporation until the day of the accident."

We conclude, therefore, that the plaintiff knowingly entered the employ of the Railroad Stevedoring Corporation in 1915 and was its employe at the time of the injury.

This obstacle to plaintiff's recovery was, of course, noticed at the trial, but was thought not necessarily insurmountable. The learned trial judge charged, in effect, that if the jury determined that the plaintiff was not an employe of the defendant he might, nevertheless, recover if the jury found (among other things) that the contract between the Railroad Stevedoring Corporation and the defendant railroad was a contract, the purpose and intent of which was to enable the defendant to exempt itself from liability under the Federal Employers' Liability act, and that question he submitted to the jury.

Of course, that instruction was predicated upon the theory that the contract was in violation of section 5 of the federal act or that the jury might lawfully so find.

But that is not so. That section is as follows:

"Section 5. That any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void; *provided,* that in any action brought against any such common carrier under or by virtue of any of the provisions of this act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employe or the person entitled thereto on account of the injury or death for which said action was brought."

We think that no evasion of the provision that "any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to

exempt itself from any liability created by this act shall to that extent be void," results from the making of a contract (as here) by an interstate railway carrier with an independent stevedoring corporation under which the work of handling the railroad company's freight from cars to boats and from boats to cars at its water front terminal is to be performed by such independent contractor, even though the latter expressly assumes all liability for injury to its employes while employed upon the premises of the railroad company. *Robinson* v. *Baltimore and Ohio Railroad Co., supra;* 59 *L. Ed.* 849; *Chicago, R. I. & P. R. R. Co.* v. *Bond, supra;* 60 *L. Ed.* 735.

The kind of contract, rule, regulation or device which congress intended to avoid by section 5 is indicated in *Philadelphia, B. & W. Ry. Co.* v. *Schubert,* 224 *U. S.* 603; 56 *L. Ed.* 911. Schubert was a member of the Railroad Relief Fund under a contract of membership in which it was agreed that the company should apply, as a voluntary contribution from his wages, a certain amount monthly for the purpose of securing the benefits described in certain regulations. One of these regulations made the acceptance of benefits on account of the injury or death of an employe equivalent to a release of the company's liability. In that connection Mr. Justice Hughes said of section 5: "It includes every variety of agreement or arrangement *of this nature;* and stipulations, contained in contracts of membership in relief departments, that the acceptance of benefits thereunder shall bar recovery, are within its terms."

Speaking of the changes wrought by the Federal Employers' Liability act, the Supreme Court, in *Second Employers' Liability Cases,* 223 *U. S.* 51, said that "the natural tendency of the changes described is to impel the carriers to avoid or prevent the negligent acts and omissions which are made the bases of the rights of recovery which the statute creates and defines," and in the present case it is to be observed that the defendant railroad had no control over the employes of the stevedoring corporation, of whom the plaintiff was one.

In *Robinson* v. *Baltimore and Ohio Railroad Co., supra;*

59 *L. Ed.* 849, it was held that a Pullman porter is not an employe of the railroad hauling the car on which he is employed so as to come within the provisions of the Federal Employers' Liability act. When engaged he agreed to protect the Pullman company in its contracts by which it undertook to insure railroad companies hauling its cars against liability for injuries to Pullman employes. The contract exempting the Pullman company and the carrier from liability was upheld.

In *Chicago, Rock Island and Pacific Railroad Co.* v. *Bond, supra;* 60 *L. Ed.* 735, an individual independent contractor was killed while in the railroad company's yard, in which, under his contract, he was unloading coal from railroad cars for the railroad. Suit under the federal act was brought against the railroad by his administrator. It was contended that the contract of decedent with the railroad, whereby he independently undertook the unloading of coal for the railroad, was a contract, regulation or device made void by section 5 of the act, and also that the decedent was an employe and not in fact an independent contractor. In reversing the trial court, who submitted to the jury the question whether or not the decedent was an employe of the company, Mr. Justice McKenna said: "We do not think that the contract can be regarded as an evasion of section 5 of the Employers' Liability act. * * * Turner [decedent] was something more than a mere shoveler of coal under a superior's command. He was an independent employer of labor, conscious of his own power to direct and willing to assume the responsibility of direction and to be judged by its results. This is manifest from the contract under review and from the cooperage contracts; it is also manifest from his contracts with the other companies to whose industries the railroad company's tracks extended. *We* certainly *cannot say that he was incompetent to assume such relation and incur its consequences.* Thus, being of opinion that Turner was not an employe of the company, but an independent contractor, it is not material to consider whether the services in which he was engaged were in interstate commerce."

In the present case, the stevedoring corporation occupied precisely the same position with respect to the defendant that Turner in the Bond case occupied to the railroad. Since the independent contractor himself could not recover because not an employe of the railroad, it follows that the plaintiff here cannot recover because not an employe of the railroad. Since, under the Bond case, a contract very similar in terms to that in the present case was not a contract in violation of section 5, it cannot be said that the contract under consideration is in violation of that section.

As was said, in effect, in the Bond case, we cannot say that the contract was one which the parties were incompetent to make. By it the defendant railroad did not undertake to relieve itself from responsibility as a common carrier to its patrons or the public, and hence we are not now concerned with such a case. The defendant railroad evidently considered, for one reason or another, that it would be more satisfactory to have its cars unloaded by stevedores employed and directed by an independent contractor. In entering into the contract for that purpose it intended, of course, to relieve itself of the burden of dealing with and being responsible for this class of employes. But that, as we have seen, it had the legal right to do. The fact that the Railroad Stevedoring Corporation when it made the contract took over the men then working for the defendant railroad is legally immaterial. These men were not obliged to work for the Railroad Stevedoring Corporation, but it was quite natural that they should have been offered such employment in view of their experience in that line of work.

The judgment under review will be reversed and a *venire do novo* awarded.

*For affirmance*—THE CHANCELLOR, SWAYZE, MINTURN, KALISCH, BLACK, JJ. 5.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 9.