STEVENSON v. LAKE TERMINAL R. CO.
No. 5509.

Circuit Court of Appeals, Sixth Circuit.
July 7, 1930.

Paul R. Brown, of Cleveland, Ohio (Fuerst & Brown, of Cleveland, Ohio, on the brief), for appellant.

T. M. Kirby, of Cleveland, Ohio (Squire, Sanders & Dempsey and Geo. H. P. Lacey, all of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, MACK, and HICKENLOOPER, Circuit Judges.

MACK, Circuit Judge.

This is an action under the Federal Safety Appliance Act April 14, 1910, § 2 (45 USCA § 11), for injuries sustained by Stevenson as a result of an alleged defective grabiron attached to the car on which he was working as brakeman. At the close of all the evidence, a verdict for defendant was directed because of insufficient evidence to justify submitting the issue of plaintiff's employment by defendant to the jury. This issue is the principal question on appeal. It requires a somewhat detailed consideration of the evidence.

Defendant, the Lake Terminal Railroad Company, a common carrier, owns and operates a system of tracks located upon its right of way which lies contiguous to the industrial

plant of the National Tube Company at Lorain, Ohio. The tube company, a manufacturer of steel tubes and rails, owns and uses in its work certain railroad tracks located within the confines of its plant yard. They are connected on the outside thereof with defendant's tracks. The tube company operates its own engines and cars over its plant tracks. But frequently it becomes necessary in switching operations and in removing cinders and dust to shunt its engines and cars out over defendant's lines, bringing them back into the plant yard at some other point. Defendant's main line is only two miles long, but its various lead and switch tracks total about forty miles. Most, if not all, of its work consists in transferring the tube company's products to other roads. Occasionally the tube company's work requires it to use defendant's engines, equipment, and crews; for this use the tube company pays a fixed charge.

Plaintiff was employed by defendant as a brakeman or switchman in the year 1922. In 1925 he was given, as were all of the railroad's employees, an additional time card marked "National Tube Company" and a new number. On the day of the accident he was using this tube company card which was stamped for work on the so-called cinder run of the tube company. The accident occurred while plaintiff's crew was using one of defendant's engines to haul a train of tube company cars on the cinder run; as part of this operation, the car containing the alleged defective grabiron was moved out on defendant's track. While there this iron slipped, plaintiff lost his hold, and was injured. These facts are conceded.

Plaintiff testified that he had never voluntarily left the employ of defendant, had signed no paper or card, had never been told of any transfer, had never been transferred, and had continued in defendant's employment until the accident; further that he never knew that the tube company had its own tracks or equipment, although he admitted that several engines were marked with its name, and had assumed that his employment with defendant continued unchanged. He admitted that the so-called cinder and dust movements were directed by employees of the tube company, but stated that these cars were always moved out on to the side-track switches or main tracks of defendant indiscriminately, and, so far as he knew, he and the other members of his train crew were always doing railroad work for defendant. He further testified that at the time of the accident he was working in the senior shift, such rating being measured from the time he began work with defendant in 1922.

Defendant introduced testimony that some time between 1922 and the date of the accident a number of its employees, including Stevenson, were transferred to the employ of the tube company; that at the time of the transfer Stevenson was told that he was being transferred, and thereafter would work for and receive his pay from the Tube Company; that he presented himself for work with the latter, received a new card, and thereafter worked under the supervision of tube company employees. The superintendent of the blast furnace and the general foreman of the tube company both testified that he had worked under their supervision after the transfer, and that he was told definitely that he was working for that organization and not for defendant. The conductor and members of the train crew with whom he was working at the time of the accident likewise testified that they, as well as Stevenson, were employees of the Tube company. Further evidence was introduced to show that Stevenson had on several occasions admitted knowledge of his employment by the tube company; that, when he had applied for credit to several Lorain merchants, he had given the name of that company as employer; and that on one occasion he had found it necessary to release an attachment of his wages due from the tube company made by another local merchant. It was also shown that during the course of his work as brakeman or conductor he had continuously made reports to the general foreman of the tube company's plant, and that this official had the right to hire or discharge him.

Plaintiff seeks a reversal on the ground that there was substantial evidence of his employment by defendant which presented a question for the jury, that as a matter of law the movements of the cars were railroad movements of a common carrier and nondelegable under the law of Ohio, and that the lease and operating arrangements were illegal and void. Defendant contends that the record clearly discloses that plaintiff was not an employee of defendant, that accordingly the Safety Appliance Acts are inapplicable, and that the direction of a verdict was proper.

■ 1. The Congressional failure to define the term "employee" in either the Safety Appliance Acts (45 USCA § 1 et seq.) or the Federal Employers' Liability Act (45 USCA §§ 51–59) has evoked a large amount of litigation. See 45 USCA § 51, notes 61–75

and cases cited. It is, however, settled that, if the injured person was not in the employ of the defendant, the action fails. Chicago, Rock Island & Pac. Ry. Co. v. Bond, 240 U. S. 449, 36 S. Ct. 403, 60 L. Ed. 735. And the Supreme Court has held that the term "employee" in the Employers' Liability Act describes the conventional relation of master and servant. Robinson v. Baltimore & Ohio R. R. Co., 237 U. S. 84, 35 S. Ct. 491, 59 L. Ed. 849; Hull v. Philadelphia & R. Ry. Co., 252 U. S. 475, 40 S. Ct. 358, 64 L. Ed. 670; see Atlantic Coast Line R. R. Co. v. Tredway, 120 Va. 735, 92 S. E. 560, 10 A. L. R. 1411. This relation is usually dependent upon the right to direct the manner in which the work should be done (Chicago, R. I. & P. R. R. Co. v. Bond, supra, at page 456 of 240 U. S., 36 S. Ct. 403), or, stated differently, its existence is determined by ascertaining whose work was being performed at the time of the injury. Linstead v. Chesapeake & Ohio Ry. Co., 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453; cf. Standard Oil Co. v. Anderson, 212 U. S. 215, 222, 29 S. Ct. 252, 53 L. Ed. 480. Selection and engagement, payment of wages, and the power of dismissal are relevant but not conclusive; direction and control of the work being done usually are determinative. See Hull v. Philadelphia & Reading Ry., 252 U. S. 475, 480, 40 S. Ct. 358, 64 L. Ed. 670.

In the case at bar, it is clear, apart from any of Stevenson's admissions, that the direction and control of the train on the cinder run was retained by the Tube Company, and that the work then being done was its work. The loading was undertaken on the order of the plant foreman, to whom reports were made; the cars were concededly its cars; and, while one of defendant's engines was used, it was operated by a tube company crew. Even if, as plaintiff testified, the train, while on defendant's tracks, was subject to the orders of defendant's train master as to signals for proceeding and the like, this fact alone is not conclusive of the question of general employment. Hull v. Philadelphia & Reading R. R., supra. When we add to the evidence recited the statements made by Stevenson to local Lorain merchants, it is clear that Stevenson was not defendant's employee. His own belief on the subject is immaterial; there is no question of estoppel or of misrepresentation; the sole question is whether or not, in fact, he was defendant's employee. We are entirely satisfied that there was no substantial evidence in favor of plaintiff on this issue, and the trial court was

therefore in duty bound to direct a verdict for the defendant. Richards v. Mulford Co., 236 F. 677 (C. C. A. 6th), and cases cited; Hardy Co. v. Baker, 10 F.(2d) 277 (C. C. A. 6th).

2. Plaintiff insists, however, that the movement of the dust and cinder cars over the tracks of defendant was a train movement over the lines of a common carrier, and that such work is nondelegable. He relies upon the decision of this court in Erie Railroad v. Margue, 23 F.(2d) 664, and that of the Supreme Court in Linstead v. Chesapeake & Ohio Ry., 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453. In the Margue Case it was held that a contract by which a railroad company employed a construction company to maintain its tracks, roadway, and structures, and required the construction company to comply with the Ohio Workmen's Compensation Law, the cost to be paid by the railroad company, was void within section 5 of the Federal Employers' Liability Act (45 USCA § 55) as a device intended to circumvent the provisions of that act. We find nothing in that case to prohibit a carrier from leasing one of its engines, and extending permission to make temporary use of its tracks at a fixed compensation, to an industrial company in order to facilitate the latter's intraplant switching operations carried on by its own employees. Nor does the Linstead Case aid plaintiff. In that case the work done was that of the defendant railroad, for which it was paid according to the standard tariffs. The Supreme Court distinguished both Hull v. Philadelphia & Reading Ry. Co., 252 U. S. 475, 40 S. Ct. 358, 64 L. Ed. 670, and Standard Oil Company v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480, cases which, in our judgment, are controlling here.

Plaintiff also relies upon several sections of the Ohio General Code to support his contention that defendant was without authority to lease any of its equipment to a private corporation, and that therefore the leasing of defendant's engine and tracks was void and illegal for all purposes. Section 8684 of the Ohio General Code does prohibit the employment of corporate equipment "for any other purpose than to accomplish the legitimate objects of its creation," but we cannot agree that this general stricture prevents, as "illegal," the accommodation hiring out of an engine, not then employed by the railroad, or the granting of such permission for the use of its tracks, as is here involved. Moreover, even an illegal lease of the equipment

does not of itself make plaintiff pro hac vice the servant of the lessor. See Standard Oil Company v. Anderson, 212 U. S. 215, 221, 29 S. Ct. 252, 53 L. Ed. 480. The lessor becomes liable only if the local law holds it responsible for the negligence of its lessee. Cf. North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159. The remaining assignments of error are either predicated upon these erroneous propositions of law or else are immaterial.

Affirmed.