## SHAW v. MONESSEN SOUTHWESTERN RY. CO.

### No. 10831.

United States Court of Appeals
Third Circuit.

Argued Dec. 19, 1952.

Decided Jan. 15, 1953.

Paul J. McArdle, Pittsburgh, Pa. (James P. McArdle, Pittsburgh, Pa., on the brief), for appellant.

P. K. Rothermal, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This case involves the applicability to the plaintiff of the Federal Employers' Liability Act, 45 U.S.C.A. § 51.[1] The issue is accurately stated in a stipulation worked out between counsel for the litigants at a pre-trial conference. It is as follows: "It is agreed that an issue to be decided by the Court is whether or not the plaintiff was engaged in interstate commerce while working for the Monessen Southwestern Railway Company, a common carrier, or was engaged as an employee of the Pittsburgh Steel Company in their open hearth department." This is the sole issue on this appeal.

The question which on its face sounds like a very simple one is made difficult by the intricate inter-corporate and inter-operation arrangements between the Pittsburgh Steel Company and the Monessen Southwestern Railway Company. Pittsburgh Steel owns all the capital stock of Monessen. It is agreed by the parties that Monessen is engaged in interstate commerce and that it operates in and around the Pittsburgh Steel plant. It owns some rolling stock and equipment which is marked with its own name. Pittsburgh Steel Company also owns some rolling stock and one type of equipment and this is marked with the Pittsburgh Steel name. Monessen operates chiefly to take products of the steel plant to connecting carriers which take the material to its destination, wherever that may be.

The plaintiff was injured while working on Pittsburgh Steel's intra-plant train which carried, by means of a diesel propelled locomotive, steel ingots from the open hearth to the "blooming mill." The material was hauled on cars belonging to Pittsburgh Steel and was pulled by a locomotive belonging to Pittsburgh Steel. To take the ingots from the open hearth to this mill was the sole job of the plaintiff brakeman and the engineer of this train on the day when the injury was sustained.

If this constituted all the facts we had there would be no real argument for maintaining that the plaintiff was so working as "closely and substantially" to affect interstate commerce.[2]

Plaintiff, however, has more to say on his side than the above facts indicate. He is a person included in the agreement made by Monessen and the Brotherhood of Railroad Trainmen, and this agreement was also signed by an officer of the Pittsburgh Steel Company. The employee responsible for the general assignment of railroad men to work in the Pittsburgh Steel yard is an employee of the railroad. Mr. Shaw could and did claim his job on this ingot-transporting train by virtue of his seniority under the contract. If he was to be discharged for cause that discharge would

1. "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, * * *."

2. See 45 U.S.C.A. § 51, last paragraph.

have to be made by a railroad employee in general charge of the operations of Monessen. On the other hand, if his work was unsatisfactory he could be sent back to the railroad by his immediate boss, foreman for the yard of Pittsburgh Steel.

One other complicating factor is to be mentioned. During the course of the day on which the injury occurred, plaintiff and his engineer had moved a Pittsburgh and Lake Erie freight car off the track on which they were working and onto a siding of Monessen. This fact is mentioned because it was stressed at argument. We think it is not significant. The men were certainly not participating in a moving of this car in interstate commerce but were, instead, getting it out of their way so they could proceed with their job in the yard.[3]

The question presented is a mixed one of fact and law. The test for employment of one person by another is a legal test. But the ascertainment of what the particular employee was doing is a factual question. It is not one which can be answered by application of any legal litmus paper, but we think the following considerations are conclusive to show that Harry Shaw was working for the Pittsburgh Steel Company at the time he received his injury and was not engaged in interstate commerce by a common carrier:

1. The place he worked and the equipment he used were exclusively the premises and property of Pittsburgh Steel, and the work he was doing was the work of the steel company, not the work of Monessen.[4]

2. He was paid by Pittsburgh Steel for the work on the day he was injured and days before.

3. Whenever there was occasion for him to work for the railroad he was paid by a railroad check (It is admitted that this is not overwhelmingly conclusive because the two sets of checks issued from the same office.).

4. His immediate boss, the person who gave him directions as to details and was in charge of the work he was doing was a Pittsburgh Steel Company employee.

■ We think perhaps this last consideration is the strongest of all. The question to be determined is: By whom is an individual employed at a particular time? The question often comes up in determining whether a given worker is a servant or an independent contractor.[5] The authority to give detailed directions in the performance of a task is a highly important consideration. See Restatement, Agency, § 220. The same test is employed in determining whether S is a servant of A, who originally employed him, or B to whom his services have been lent. Restatement, Agency, § 227. The test is illustrated in several Pennsylvania decisions.[6] They are not conclusive on the question of whether a man comes under the Federal Employers' Liability Act, but they are helpful in determining whose employee a given person is at a particular time. When these considerations are added together we find them conclusive that the plaintiff was, on the day of his injury, an employee of Pittsburgh Steel from whom he has received compensation under the Pennsylvania Compensation Act. This conclusion is in accord with

3. See Docheney v. Pennsylvania R. Co., 3 Cir., 1932, 60 F.2d 808.

4. Whose work is being done seems to have been the most important factor in Supreme Court decisions in somewhat similar cases. Linstead v. Chesapeake & Ohio Ry. Co., 1928, 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453; Hull v. Philadelphia & Reading Ry. Co., 1920, 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670.

5. See Cimorelli v. New York Central R. Co., 6 Cir., 1945, 148 F.2d 575.

6. Wall v. Penn Lumber & Mill Works, 1952, 171 Pa.Super. 512, 90 A.2d 273; Ramondo v. Ramondo, 1951, 169 Pa.Super. 102, 82 A.2d 40 (liability to employee under workmen's compensation law). Donnelly v. Fred Whittaker Co., 1950, 364 Pa. 387, 72 A.2d 61; Pennsylvania Smelting & Refining Co. v. Duffin, 1950, 363 Pa. 564, 70 A.2d 270, 17 A.L.R.2d 1384 (liability to third party for negligence of employee).

decisions from other circuits on comparable though not identical facts.[7]

■ It is suggested by the plaintiff that the court should be alert to void inter-company arrangements drawn to avoid federal jurisdiction. We accept that but see no evidence of such an arrangement here. We, on the other hand, should be alert to avoid the extension of an act applicable to employees in interstate transportation to cover those who are engaged in other occupations in industrial plants. Such an extension might well, in many instances, deprive an injured workman of his rights under a state compensation act where his right of recovery will not depend upon proof of negligence.

The judgment of the district court will be affirmed.

7. Terminal R. Ass'n of St. Louis v. Fitzjohn, 8 Cir., 1948, 165 F.2d 473, 1 A.L. R.2d 290; Stevenson v. Lake Terminal R. Co., 6 Cir., 1930, 42 F.2d 357.