**Patrick MAZZUCOLA, Appellant,**

v.

**PENNSYLVANIA RAILROAD COMPANY.**

**No. 13156.**

United States Court of Appeals Third Circuit.

Argued May 10, 1960.

Decided July 20, 1960.

Arnold M. Stein, Jersey City, N. J. (Samuel M. Cole, Jersey City, N. J., on the brief), for plaintiff-appellant.

Ronald D. Barrett, Newark, N. J. (Lum, Fairlie & Foster, Raymond W. Troy, and Ronald D. Barrett, Newark, N. J., on the brief), for defendant-appellee.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

Plaintiff has sued the Pennsylvania Railroad for personal injuries sustained when a railroad car which had just been moved crushed him between the end of the car and a caterpillar tractor which plaintiff was endeavoring to disconnect from the car at the time. The defendant won a motion for summary judgment from which the plaintiff appeals.

The complaint sets out two bases for recovery. One is that the plaintiff is entitled to the protection of the Federal Safety Appliance Act, 45 U.S.C.A. §§ 1–23, and that the defendant violated that Act. The second is that the plaintiff is an "employee" of the defendant under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60.

 Plaintiff's claim for protection under the Federal Safety Appliance Act is as ingenious as it is unsound. He says first that the Act is not limited in its protection to those employed by the railroad. That is true and is established by Shields v. Atlantic Coast Line R. R., 1955, 350 U.S. 318, 76 S.Ct. 386, 100 L.Ed. 364. Then the plaintiff points to Section 2 of the Act which makes it unlawful for any carrier "to haul or permit to be hauled or used on its line any car * * * not equipped with couplers coupling automatically by impact * *." 45 U.S.C.A. § 2. He points out that Section 8 of the Act extends the requirement of automatic couplers to "all trains, locomotives, tenders, cars, and similar vehicles used on any railroad * * *." 45 U.S.C.A. § 8.

According to the complaint, depositions and other items of record, the accident in this case occurred when the plaintiff was uncoupling a railroad car from a caterpillar tractor which had moved the car from one place to another at the pier where a ship was being unloaded. The railroad brought the cars to this area and left them. The loading of the cars with the freight taken from the vessel was done by the McGrath Stevedoring Corporation which was employed by the Port of New York Authority which, in its turn, had a contract for unloading with the Pennsylvania Railroad. Plaintiff was a McGrath foreman. As a car was loaded it became necessary to move it away from, and to move another car up to, the hatch where the cargo was being removed from the vessel and loaded upon the freight cars. This was done by means of the caterpillar tractor. It was fastened to the freight car by a five-foot cable attached to the car's coupling device. The tractor then moved the car so far as necessary to get it in the proper position to continue the loading work. It is not claimed that the freight car did not have the required automatic coupling device. What is claimed is that the lack of an automatic coupler on the caterpillar tractor is a violation of the Act.

We think that the question gets down to the inquiry whether the caterpillar tractor is a "locomotive" within the meaning of the statute. The plaintiff's argument would seem to say that anything that hauls a car is a "locomotive." According to this line of argument, a team of mules hitched to a car to move it would be a "locomotive" and so would a block and tackle device operated by human power exerted for the same purpose. It is true that the statute has been applied to a gasoline-motor-powered track car and a handcar hauled by it.[1] But these vehicles run on rails and are part of railroad operations fully as much as a gasoline-propelled train of one or

[1]. See Baltimore & Ohio Ry. v. Jackson, 1957, 353 US.. 325, 77 S.Ct. 842, 1 L.Ed.2d 862, and cases cited at 332–33.

more passenger cars. A caterpillar tractor runs on its own tracks, not those of the railroad. It would be stretching an admittedly remedial act far beyond the limits of elasticity to apply an automatic coupler test to the caterpillar tractor. We conclude that there is no merit in the plaintiff's first point.

■ The second point, namely, that the plaintiff was entitled to the benefits of the Federal Employers' Liability Act[2] is a much more difficult question. Plaintiff charges that the unloading contract with the Port Authority should be interpreted as a device to allow the railroad to escape from the responsibilities of the statute. This, if true, would make the contract void to that extent. See 45 U.S.C.A. § 55. He calls attention to a provision in the contract between the railroad and the Port Authority by which the railroad reserves the right to perform loading or unloading with its own forces when it deems necessary and points out that the contract by its terms is terminable on ten days notice and is not assignable without the railroad's consent.[3] As to the significance of the "right to control," see this Court's discussion in Byrne v. Pennsylvania R. R., 3 Cir., 1958, 262 F.2d 906, 911–913, and the quoted jury charge in note 4 infra.

This entire question of when an injured workman comes under the Act and when he may look only to what is claimed to be an independent contractor who has hired him is one of continuing difficulty. Fact distinctions are close. As the Sixth Circuit has pointed out in a series of cases, each case has to be looked at by itself and the problem of finding on which side of the line any one case falls is one which has bothered judges before the present incumbents sat on the bench and will continue to be troublesome after they have left. See Cimorelli v. New York Central R. Co., 6 Cir., 1945, 148 F.2d 575, 577, and the two cases following in the Sixth Circuit: Pennsylvania R. Co. v. Roth, 163 F.2d 161, certiorari denied 1947, 332 U.S. 830, 68 S.Ct. 208, 92 L.Ed. 404, and Pennsylvania R. Co. v. Barlion, 1949, 172 F.2d 710.

The United States Supreme Court has recently summed up this area of the law as follows:

"The Federal Employers' Liability Act does not use the term 'employee' and 'employed' in any special sense * * * so that the familiar general legal problems as to whose 'employee' or 'servant' a worker is at a given time present themselves as matters of federal law under the Act. * * * It has been well said of the question that '[e]ach case must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative.' * * Although we find no decision of this Court that has discussed the matter, we think it perfectly plain that the question, like that of fault or of causation under the Act, contains factual elements such as to make it one for the jury under appropriate instructions as to the various relevant factors under law. * * * Only if reasonable men could not reach differing conclusions on the issue may the question be taken from the jury. * * * " Baker v. Texas & Pac. Ry., 1959, 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed. 2d 756.

2. "Every common carrier by railroad while engaging in commerce * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * *." 45 U.S.C.A. § 51.

3. Plaintiff also relies on the fact that the goods were being loaded onto the railroad cars preparatory to shipment of them by the railroad, that the "spotting" and removal of the cars was done by railroad men while McGrath's men did the actual loading and unloading, and that the loading was required, by the contract between the railroad and the Port Authority, to conform to certain standards imposed by the railroad pursuant to ICC regulations.

The Restatement of Agency 2d § 220 (1958) sets out a series of factors to be considered in each particular case in determining whether a person is an "employee." It reads as follows:

"§ 220. Definition of Servant

"(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

"(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer;

"(i) whether or not the parties believe they are creating the relation of master and servant; and

"(j) whether the principal is or is not in business."

The Supreme Court recently approved both this Section of the Restatement and a proposed jury charge which included these factors. Ward v. Atlantic Coast Line R. Co., 1960, 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820.[4]

We think that in the case before us, as Judge Clary did in Strauss v. Reading Co., D.C.E.D.Pa.1953, 14 F.R.D. 457, that summary judgment is inappropriate. There should be full examination of the facts so that the jury can, under proper instructions by the court, reach an informed decision. As the case now stands we think the factors supporting the plaintiff's claim are pretty weak. A trial upon the facts may or may not strengthen them, but such a trial should be had in order to insure fairness in this case.

The judgment of the district court will be reversed and the case remanded for further proceedings in accordance with this opinion.

---

4. A basic portion of the approved charge was as follows: "If you find that the railroad * * * had the power to direct, control and supervise the plaintiff in the performance of the work he was doing at the time he was injured, then you should find that the plaintiff was employed by the defendant railroad at the time he was injured." 362 U.S. at page 398 n. 1, 80 S.Ct. at page 791.

In Sinkler v. Missouri Pac. R. R., 1958, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799, the Supreme Court held that "when a railroad employee's injury is caused in whole or in part by the fault of others performing, under contract, operational activities of his employer, such others are 'agents' of the employer within the meaning of § 1 of FELA" and the railroad is liable to compensate the employee for the injuries sustained. 356 U.S. at pages 331–332, 78 S.Ct. at pages 758, 763. But, it is crucial under the Sinkler formulation that the contractor be performing "operational activities required to carry out the franchise" of the railroad. The Ward case makes this clear beyond doubt. 362 U.S. at pages 397–398, 80 S.Ct. at page 789.

We think on the present state of the record that these loading operations at the pier were not "operational activities required to carry out the franchise" of the railroad. But since, as already indicated, this case is going back to the district court, the parties are free to introduce such evidence bearing on the question as they have.