Emerson **JOHNSON**, Appellant,

v.

**LOUISVILLE AND NASHVILLE RAIL-
ROAD COMPANY, Appellee.**

Court of Appeals of Kentucky.

May 21, 1965.

Rehearing Denied Oct. 22, 1965.

Thomas B. Givhan, Shepherdsville, Robert L. Milby, Hamm, Taylor & Milby, London, for appellant.

Edwin R. Denney, Charles Landrum, Jr., Denney & Landrum, Lexington, Herman M. Tye, Barbourville, James M. Terry, Eugene W. Herde, Louisville, for appellee.

CLAY, Commissioner.

This suit was brought by plaintiff appellant against defendant appellee railroad under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.) and/or KRS 277.310. A verdict was directed for defendant on the ground that plaintiff was not an "employee".

Whether the federal or state statute applies is unimportant because they are substantially the same with respect to the basis of liability. In substance they provide that a railroad common carrier shall be liable

in damages for negligence to any person suffering injury "while he is employed by such carrier".

The accident occurred during an unloading operation of one of defendant's freight cars on a siding or team track (referred to as "the Mill Track"). It was used for the delivery of freight to the Haeberlin Supply Company (hereafter referred to as "Haeberlin"), and others. Haeberlin had entered into a license agreement with defendant which gave the former a preferred but not exclusive use of a 50 foot section of this siding, under which Haeberlin maintained a concrete pit for the unloading of sand and gravel.

Plaintiff was an employee of Haeberlin. He, with two other Haeberlin employees, had unloaded a car over the pit. It was necessary to move it to make room for another car to be unloaded. While engaged in a routine method of spotting the car, plaintiff was injured.

It is undisputed that plaintiff was regularly employed by Haeberlin, was performing the unloading work for it, and was exclusively under its supervision and control. Plaintiff contends, however, that the movement of the freight car constituted a railroad operation of defendant, that in such operation plaintiff was a "loaned servant" of the defendant, and therefore was the latter's employee. It is suggested that, in the light of many court decisions which have considered related problems, we can evolve some legal theory which would identify plaintiff as an "employee" of the defendant under the Federal Employers' Liability Act.

█ We encounter no difficulty with the "loaned servant" doctrine. An employee of one person can become the servant of another, alternately or simultaneously, or wholly or partially. See Restatement, Agency 2d, section 227 (page 500); 35 Am.Jur., Master and Servant, section 18 (page 455); Ambrosius Industries v. Adams, Ky., 293 S.W.2d 230.

One of the earlier cases invoking the doctrine under the Federal Employers' Liability Act was Linstead v. Chesapeake & O. Ry. Co., 276 U.S. 28, 48 S.Ct. 241, 72 L.Ed. 453. The injured person, a conductor, was an employee of the Big Four Railway Company. By a reciprocal arrangement, Big Four and the C & O alternated the furnishing of train crews for the interchange of traffic on a 12 mile section of track owned by the C & O. On the day of the accident the Big Four employee was part of the train crew moving a C & O train of cars on this section of track. The Supreme Court held the employee had been loaned to the C & O by the Big Four, that the work being done was the work of the C & O, and that the train crew was under the supervision and control of the C & O. Obviously under these circumstances, at the time of the accident the Big Four employee was acting as the servant of the C & O. In resolving the basic question, the opinion stated (page 34, 48 S.Ct. page 243) that the inquiry must be: *"whose is the work being performed,* a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work." (Our emphasis)

From this innocuous beginning, the "loaned servant" doctrine under the Federal Employers' Liability Act has grown into such a giant octopus of intermingled legal theories as to lead some federal courts to the brink of despair.

Some of the problems which developed are exhibited in the leading case of Cimorelli v. New York Central R. Co., 6 Cir., 148 F.2d 575. Here the railroad company had contracted with the United States government to maintain in its yards a temporary storage place for war material in transit, which included unloading and reloading cars. The railroad company was to be paid extra for its services. It then contracted with the Duffy Company to unload and reload the cars. An employee of Duffy was injured. It was held that because the railroad company had general control of the

operation, Duffy was not an independent contractor and therefore the injured party was an employee of the railroad. (The reasoning in this opinion is in some respects difficult to follow.) Similar cases are Pennsylvania Railroad Company v. Roth, 6 Cir., 163 F.2d 161, certiorari denied, 332 U.S. 830, 68 S.Ct. 208, 92 L.Ed. 404, and Pennsylvania Railroad Company v. Barlion, 6 Cir., 172 F.2d 710.

There are many more "independent contractor" and other cases which exhibit an amazing lack of consistency. The concepts of "general control" of a particular operation, specific control of "the details of the work being performed", and the "right to control" are so intermixed and differently emphasized that the law on the subject as it relates to the Federal Employers' Liability Act is well nigh incomprehensible. See Hull v. Philadelphia & Reading Ry. Co., 252 U.S. 475, 40 S.Ct. 358, 64 L.Ed. 670; Baker v. Texas & P. Ry. Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756; Ward v. Atlantic Coast Line R. Co., 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820; Shenker v. Baltimore & Ohio R. Co., 374 U.S. 1, 83 S.Ct. 1667, 10 L.Ed.2d 709; Drago v. Central R. Co., 93 N.J.L. 176, 106 A. 803, certiorari denied, 251 U.S. 553, 40 S.Ct. 118, 64 L.Ed. 411; Docheney v. Pennsylvania Railroad Company, 3 Cir., 60 F.2d 808, certiorari denied, 287 U.S. 665, 53 S.Ct. 222, 77 L.Ed. 573; Latsko v. National Carloading Corporation, 6 Cir., 192 F.2d 905; Dougall v. Spokane, P. & S. Ry. Co., 9 Cir., 207 F.2d 843, certiorari denied, 347 U.S. 904, 74 S.Ct. 429, 98 L.Ed. 1063; Byrne v. Pennsylvania R. Co., 3 Cir., 262 F.2d 906, certiorari denied, 359 U.S. 960, 79 S.Ct. 798, 3 L.Ed.2d 766; Mazzucola v. Pennsylvania Railroad Company, 3 Cir., 281 F.2d 267, 91 A.L.R.2d 518.

There is one comforting and consistent fact which appears in the foregoing cases. From a realistic as well as a legal standpoint, the activity involved constituted *work being performed for the railroad.*

Plaintiff in effect calls upon us to extract from a tangled web of legal principles some legal theory which would stretch the "loaned servant" doctrine to cover him. Perhaps we should summarily decline this invitation because plaintiff fails to show us the way, but since we have examined the vast number of cases cited by both parties (and others), we will comment further on the lack of merit in plaintiff's position.

In the first place, we have no "independent contractor" problem. This is so for the simple reason that Haeberlin had not contracted with defendant to perform any service for it, independently or otherwise.

Plaintiff suggests that under section 16 of the Licensing Agreement, which permitted Haeberlin a special use of defendant's siding for unloading operations, Haeberlin undertook to perform some service for the defendant. That section in substance provided that in case it was necessary for *Haeberlin to move cars* from place to place on the track it would only designate its own employees who were experienced. What this has to do with anything involved in this case we are unable to grasp. Haeberlin did not undertake or agree to perform *any* service for defendant.

Further clarifying the controversy, we have no problem involving the *extent* of defendant's *actual control* of the plaintiff in the performance of this particular work. This is so because there was no semblance of such control at all. Defendant did not participate in any manner in this unloading operation or any phase of it.

Having eliminated the "independent contractor" and the actual "supervision" or "control" problems which have so plagued the federal courts, we are almost at the end of our rope. Only one small knot remains.

The suggestion is made that the movement of a railroad car on a siding is a nondelegable operating function of a railroad company, that therefore this particular movement constituted work performed for the railroad, that thereby defendant had a

"right to control' the plaintiff's activities, and consequently the plaintiff was defendant's employee. No authority is cited for such a proposition and it cannot be supported as a matter of fact or theory.

Haeberlin contracted with defendant for a line haul service which included placing freight cars on the Mill Track siding. Defendant's tariff charge did not require of it any further movement of such cars thereon. See Propriety of Operating Practices, Ex Parte 104, 209 ICC 11 (1935); Corn Products Refining Co. v. United States, D.C., 69 F.Supp. 869, affirmed 331 U.S. 790, 67 S.Ct. 1521, 91 L.Ed. 1819; United States v. Wabash Railroad Co., 321 U.S. 403, 64 S.Ct. 752, 88 L.Ed. 827.

The "spotting" of the freight car which resulted in plaintiff's injury was an operation that defendant neither was required to perform nor was performing as a part of the common carrier service. This activity was solely for the benefit of Haeberlin, and was carried out exclusively by its employees entirely under its control. The unloading movement cannot be characterized as part of the operation of the railroad or as work or service being performed for it. See in this connection Stevenson v. Lake Terminal R. Co., 6 Cir., 42 F.2d 357; Docheney v. Pennsylvania R. Co., 3 Cir., 60 F.2d 808; certiorari denied, 287 U.S. 665, 53 S.Ct. 222, 77 L.Ed. 573.

We return to our beginning point. Unless the *work was being performed for the defendant* in some realistic sense, we cannot even start on the tortuous road toward a determination that the employee of another party may be labeled in law an "employee" of defendant. Since the activity cannot be so classified, plaintiff did not even begin to establish a claim against defendant under the Federal Employers' Liability Act or KRS 277.310.

■ Plaintiff suggests one more possibility. It is that defendant was liable to plaintiff *as a member of the public* for the acts of its licensee Haeberlin under section 203

of the Kentucky Constitution. That section relates to the leasing or alienation of a franchise by a corporation. The simple answer to this argument is that defendant had neither leased nor alienated its franchise to Haeberlin, nor could plaintiff be classified as a "member of the public" within the rule of liability. See Hunsaker's Adm'x v. Chesapeake & O. Ry. Co., 185 Ky. 686, 215 S.W. 552, 28 A.L.R. 117.

The trial court properly directed a verdict for defendant.

The judgment is affirmed.