Mike **VALO**

v.

**MONESSEN SOUTHWESTERN RAILWAY COMPANY, a corporation, Appellant.**

**No. 17194.**

United States Court of Appeals Third Circuit.

Argued Oct. 8, 1968.

Decided March 12, 1969.

Paul A. Manion, Reed, Smith, Shaw & McClay, Pittsburgh, Pa. (Francis St. C. O'Leary, Pittsburgh, Pa., on the brief), for appellant.

Paul E. Moses, Evans, Ivory & Evans, Pittsburgh, Pa. (Robert B. Ivory, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and VAN DUSEN, Circuit Judges.

GERALD McLAUGHLIN, Circuit Judge.

Monessen Southwestern Railway Company (Monessen), an industrial carrier admittedly engaged in interstate commerce, appeals from a District Court judgment based on a jury verdict against it and in favor of the personal injury plaintiff-appellee. The case involves the application of the Federal Employers' Liability Act, 35 Stat. 65 (1908), as amended 53 Stat. 1404 (1939), 45 U.S. C.A. § 51, which reads, in part, as follows:

"Every common carrier by railroad while engaging in commerce between

any of the several States or Territories * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * *

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter."

The issue is whether or not appellee Valo was employed by Monessen at the time of his injury. The jury below decided that upon the evidence he was an employee of Monessen and entitled to recovery under the above Act. He was injured while attempting to throw a switch in the course of his employment as a "hook-on" (brakeman) on an intra-plant train, the "hot run", at Pittsburgh Steel Company's Monessen works. A brief exposition of the operation of the "hot run" where Valo was hurt is necessary in order to understand the problem presented. The "hot run" was an intra-plant operation of Pittsburgh Steel Company. It was designed to transport steel ingots from the "stripper" to the soaking pits by means of a locomotive and a number of cars or "buggies". Prior to 1935, according to the testimony of Dunkerly, a retired vice-president and general manager of Monessen, employees on the "hot run" were Pittsburgh Steel employees. Sometime after 1935, because of the danger in the improper use of steam locomotives, Monessen was asked by the parent company, Pittsburgh Steel, to apply the railroad training program to the employees on the "hot run". The railroad undertook the training program and assigned qualified men to the "hot run". These men on the "hot run", including Valo, have been members of the Brotherhood of Railroad Trainmen since 1944 as provided by the labor agreement between the Brotherhood of Railroad Trainmen and the Monessen Southwestern Railway in 1944 to which Pittsburgh Steel Company had manifested its acceptance. Nevertheless it is the contention of appellant, Monessen, that at the time of the accident in question, Valo was not employed by the railroad but was an employee of Pittsburgh Steel Company.

The question of employment under Section 51 of the Federal Employer's Liability Act is a fact question for the jury. The Supreme Court of the United States in Baker v. Texas and Pacific Railway Co., 359 U.S. 227, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959) states the rule as follows:

"The Federal Employers' Liability Act does not use the terms 'employee' and 'employed' in any special sense, Robinson v. Baltimore & Ohio R. Co., 237 U.S. 84, 94, 35 S.Ct. 491, 494, 59 L.Ed. 849 so that the familiar general legal problems as to whose 'employee' or 'servant' a worker is at a given time present themselves as matters of federal law under the Act. See Linstead v. Chesapeake & Ohio R. Co., 276 U.S. 28, 33-34, 48 S.Ct. 241, 243, 72 L.Ed. 453. It has been well said of the question that 'each case must be decided on its peculiar facts and ordinarily no one feature of the relationship is determinative.' Cimorelli v. New York Central R. Co., 6 Cir., 148 F.2d 575, 577. Although we find no decision of this Court that has discussed the matter, we think it perfectly plain that the question, like that of fault or of causation under the Act, contains factual elements such as to make it one for the jury under appropriate instructions as to the various relevant factors under law. See Restatement, Agency 2d, § 220, comment C; § 227, comment A. Only if reasonable men could not reach differing conclusions on the issue may the question be taken from the jury. See Chicago, R. I. and P. R. Co. v. Bond, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735." 359 U.S. at 228, 79 S.Ct. at 665.

Appellant makes no contention that the charge to the jury was inadequate. The legal tests of employment and the relevant factors for the jury to consider were clearly set forth in the charge as follows:

"Now summarizing again on the crucial issue of employment, I will read again the paragraph which seems to sum up clearly the factors that are to be considered by you in reaching a determination on the issue of employment: One of the issues to be decided in this case is whether or not the plaintiff was employed by the defendant railroad or the steel company at the time he was injured. The issue must be determined from all of the circumstances of the case. The primary factor to be considered is whether or not the railroad or the steel company had the power to direct, control and supervise the plaintiff in the performance of his work at the time he was injured. Other relevant factors to be considered are who selected and engaged the plaintiff to perform the work, who furnished the tools with which the work was performed, who paid the plaintiff's wages for the performance of the work, what was the amount of the scale of wages, and who had the power to fire or dismiss the plaintiff from work."

These various tests carefully set forth in the charge are consonant with the tests for employment applied in this Court. See Shaw v. Monessen Southwestern Ry. Co., 200 F.2d 841 (3 Cir. 1953).

Appellant urges that "the facts * * * are not sufficient to support a finding that he (Valo) was employed by the Railway at the time of the accident in question * * *." The facts

relevant to Valo's employment status show that, in securing a position on the "hot run", he was interviewed by an official of the railroad. He is also, as above noted, covered by the agreement between the Brotherhood of Railroad Trainmen and Monessen. Any discipline action would have to be taken by a railroad supervisor and not by an employee of the Pittsburgh Steel Company. However, the equipment and the railroad tracks belonged to Pittsburgh Steel Company and Valo, at the time of his injury, was paid by Pittsburgh Steel. The crucial factor is who had the authority to give Valo detailed directions in the performance of his work (Shaw v. Monessen Southwestern Ry., Co., supra). Valo testified that, although a Pittsburgh Steel Company employee had authority to tell him how many loaded "buggies" to take from the "stripper" area and where to put them, the Railroad yardmaster was his supervisor.[1]

Valo's testimony was solidly supported by the testimony of Nichols, a conductor and brakeman on the Monessen and general chairman of Lodge 447 of the Brotherhood of Railroad Trainmen.[2]

Of particular importance, regarding the question of control over Valo's work activity, is evidence to the effect that the authority of the Pittsburgh Steel stripper foreman over Valo's work was limited to instructions concerning the placement of the "buggies" and the number of these to transport to their destination, the soaking pits. Valo explained during cross-examination:

"He gives me—he is placed there in—to instruct me in my work and the performance of the work in what he wants done, but he does not supervise, in other words, *only to the extent of*

---

1. "THE COURT: Who would be the supervisor over you, the conductor? Or, who would be the man to tell you—
THE WITNESS: The yardmaster, in other words.
THE COURT: (continuing)—what to do?
THE WITNESS: The yard master."

2. "Q. Well, who is Mr. Valo's immediate superior when he is working on the hot run?

A. Be the yard master at the desk.
Q. And, is the yard master a Pittsburgh Steel employee?
A. No, sir.
Q. And, by whom is he employed?
A. Monessen Southwestern Railway Company."

*placing cars and the movement of cars."* (Emphasis supplied.)

Again, Valo's testimony on this point was substantially corroborated by Nichols.[3]

A Pittsburgh Steel employee at the soaking pits could tell Valo where to place the loaded "buggies". Nichols testified, in effect, that the giving of placement instructions by an industry employee was common practice.[4] The proofs show that Valo was subject to the provisions of the "Rules of the Monessen Southwestern Railway Company for the Government of the Operating Department". Valo received a copy of this rule book and was required to observe the rules contained therein. These rules and regulations detailed, among other things, the types of signals used in starting and stopping a train, the kind of lights used, and the method of signaling used at night.

The critical testimony concerning the Pittsburgh Steel stripper foreman's limited authority over Valo, although controverted by appellant's evidence, raises a substantial dispute as to who had control over Valo's work activity. Considering the facts most favorable to plaintiff there was substantial dispute as to Valo's employment status.[5]

■■ We are not unmindful of prior decisions in this Circuit involving (Intra-Plant) operations. See, inter alia, Docheney v. Pennsylvania Railroad Co., 60 F.2d 808 (3 Cir. 1932), cert. denied 287 U.S. 665, 53 S.Ct. 222, 77 L.Ed. 573 (1932); Kelly v. Pennsylvania Railroad Co., supra; Shaw v. Monessen Southwestern Railway Co., supra. Appellant argues that the instant appeal is governed squarely by our decision in Shaw, supra. That suit was tried to the court. It involved the same "hot run" operation in Pittsburgh Steel's Monessen plant and Shaw was also a brakeman. The district court passing, not as a matter of law on Shaw's employment but as a fact finder decided that Shaw was an employee of Pittsburgh Steel and not Monessen. We have emphasized that there is in this appeal critical testimony to the effect that Pittsburgh's stripper foreman had only limited authority over Valo. Evidence on this factor was absent in the Shaw decision. That opinion is sound law on its own facts. Here, in the light of the trial proofs we must find that there was sufficient evidence from which the jury could reasonably conclude that Valo was an employee of Monessen. Since the question of employment, like that of fault or causation, under the Federal Employers' Liability Act is one of fact, this Court cannot now substitute its conclusions for those of the jury unless there is a complete absence of probative facts to support the conclusion of the jury. Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946). We

---

3. "Q. So are you then telling us that the only thing which the Pittsburgh Steel man may tell Mr. Valo is where to put the steel, put the buggies?
A. Yes, sir.
\* \* \* \* \*
Q. Is there anything that you know of in connection with Mr. Valo's work on the hot run which would be dictated by anyone except Monessen Southwestern with the exception of where to put the cars?
A. No, sir."

4. "Q. This is the same as any other railroad where you were delivering cars? Someone at the industry would tell you where to put them.
A. Spotting of the car, that is right."

5. Cf. Kelly, v. Pennsylvania Railroad Co., 245 F.2d 408 (3 Cir. 1952).

This was an appeal by defendant from a judgment for plaintiff and from the district court's refusal to enter summary judgment in its favor in an action brought under the Federal Employers' Liability Act. Although the court reversed with instructions to enter judgment for defendant, Judge Goodrich stated at pp. 410–411:
"If there were points of substantial dispute on the facts, this case would have to go back for retrial and proper instructions. We believe we have been careful not to interfere with the fact-finding function of the jury on any disputed question here. We believe that on the facts most favorable to plaintiff it is clearly established that he was not an employee of the Pennsylvania Railroad \* \* \*."

are satisfied that there was an adequate evidentiary basis for the jury's conclusion. Therefore the judgment of the District Court will be affirmed.